**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Segundo T.,

Petitioner,

v.

Joel L. Brott, *Sheriff, Sherburne County, MN*; Todd Blanche, *Attorney General of the United States*; Markwayne Mullin, *Secretary of the Department of Homeland Security*; David Venturella, *Senior Official Performing Duties of Director of United States Immigration and Customs Enforcement*; David Easterwood, *Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*, in their official capacities,

Respondents.

File No. 26-CV-3871 (JMB/LIB)

**ORDER**

---

Danielle Oxendine Molliver, Nwokocha & Operana Law Offices, Minneapolis, MN, for Petitioner Segundo T.

David W. Fuller and Pedro Del Valle, IV, United States Attorney's Office, Minneapolis, MN, for Respondents Todd Blanche, Markwayne Mullin, David Venturella, and David Easterwood.

---

This matter is before the Court on Petitioner Segundo T.'s[1] Petition for Writ of

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in immigration cases.

Habeas Corpus (Petition) under 28 U.S.C. § 2241 (Doc. No. 1 [hereinafter, "Pet."]), which names Todd Blanche, Markwayne Mullin, David Venturella, David Easterwood, and Joel Brott as Respondents. (Pet.) For the reasons explained below, the Court grants the Petition.

**FINDINGS OF FACT**

1. Segundo T. is a 63-year-old native and citizen of Ecuador. (Pet. ¶ 6; Doc. No. 10-1 at 1.)

2. In 1997, Segundo T. entered the United States without inspection. (Pet. ¶ 11.)

3. For the past twenty-nine years, Segundo T. has continuously resided in the United States. (*Id.* ¶ 11.)

4. Segundo T. has resided at the same fixed address for at least the past twenty years. (*Id.* ¶ 42.)

5. Segundo T. has maintained stable employment. (*Id.* ¶ 14.)

6. Segundo T. has and has close ties to several United States citizen grandchildren[2] in the United States. (*Id.* ¶ 14.)

7. Segundo T. has never been arrested, charged, or convicted of any crime in the United States or in Ecuador. (*Id.* ¶ 13.)

8. On August 20, 2026, four Immigration and Customs Enforcement (ICE) agents were searching for a target (not Segundo T.) in south Minneapolis when they noticed

[2] Segundo T. has no living children; his two children were murdered in Ecuador. (Pet. ¶¶ 12, 14.)

a pickup truck drive past; Segundo T. was riding in the pickup and was on his way to work with at least one other person. (Doc. No. 10-1 at 2.)

9. ICE agents started to follow the pickup truck after running its plates and discovering that it was registered to a non-citizen[3] who lacked legal immigration status. (*Id.*)

10. ICE agents initiated an investigatory stop of the pickup truck after following it for more than twenty miles to Blaine, Minnesota. (*Id.*; Pet. ¶ 17.)

11. During the investigatory stop, agents discovered that Segundo T. had an expired Ecuadorian passport in his possession, and Segundo T. "freely admitted that he did not have permission to reside in the United States legally." (Doc. No. 10-1 at 2, 3.)

12. Respondents conducted a "record check[]," which showed that Segundo T. "had no record of entering the United States [l]egally" (Doc. No. 10-1 at 2), at which point agents arrested Segundo because, after consultation with a Supervisory Detention and Deportation Officer, "it was determined [Segundo T.] was a flight risk due to[:] his failure to register his address as required by law, his lack of identification containing a current address, and access to a mobile conveyance that would allow him to leave the area with no way to locate/contact him in the future." (*Id.*)

13. ICE agents did not show Segundo T. a warrant during the arrest and agents did not inform Segundo of any individualized basis for their belief that a warrantless arrest was justified. (Pet. ¶¶ 19, 20; *see also generally* Doc. No. 10-1.)

---

[3] There is no evidence presented that the pickup truck or the person to whom it was registered had any connection whatsoever to the unnamed initial "target."

14. ICE agents transported Segundo T. to the Bishop Henry Whipple facility, where they booked him. (Doc. No. 10-1 at 2.)

15. During booking, Respondents served Segundo T. with (1) a Form I-862 Notice to Appear (NTA), which charged Segundo T. as removable for having entered the United States without inspection (Doc. No. 10-2); and (2) a Form I-200 administrative warrant, on which agents indicated that they had probable cause to arrest and detain Segundo T. under 8 U.S.C. § 1226 based upon statements made by Segundo T. to officers about his immigration status, records checks, and upon execution of the NTA. (Doc. No. 10-3).

16. Segundo T. was not provided a bond hearing. (Pet. ¶ 22.)

17. Respondents have detained Segundo T. at the Sherburne County Jail since his arrest. (*Id.* ¶ 6.)

18. On September 2, 2026, Segundo T. filed his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 4.)

19. On September 2, 2026, the Court ordered Respondents to respond to the Petition on or before 11:00 a.m. on September 7, 2026. (Doc. No. 6.)

20. On September 7, 2026, Respondents timely filed a response to the Petition. (Doc. No. 9.)

## DISCUSSION

In his Petition, Segundo T. seeks immediate release, arguing that Respondents violated the Fourth Amendment and the warrantless arrest requirements of 8 U.S.C. § 1357(a)(2) and that Respondents deprived him of both procedural and substantive due

process in violation of the Fifth Amendment. For their part, Respondents argue that they satisfied the warrantless arrest requirements of section 1357(a)(2).[4] The Court agrees with Segundo T. and grants the Petition.

**A. Right to Habeas Relief**

A writ of habeas corpus may be granted to any person who demonstrates he is in custody in violation of the Constitution or laws of the United States. 28 U.S.C. § 2241(c)(3); *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (concluding that the Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States" (citing U.S. Const., Art. I, § 9, cl. 2)). For most of the nation's history, habeas review "has remained a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (quotation omitted). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus "extends to . . . immigration-related detention." *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 900–01 (D. Minn. 2020) (citation omitted). The petitioner bears the burden of proving that his detention is illegal by a preponderance of

[4] Respondents also reference the provisions of section 1225(b)(2), as interpreted by the Eighth Circuit. (*See* Doc. No. 9 at 5–6 (citing *Avila v. Bondi*, 170 F.4th 1128, 1133–35 (8th Cir. 2026) (concluding that section 1225(b)(2) requires the mandatory detention of non-citizens, without any individualized determination and regardless of whether the non-citizen is encountered at the border at the time of entry or in the interior of the United States months, years, or decades after entry). *But see Rodriguez Vazquez v. Bostock*, 183 F.4th 1160, 1176, 1180 (9th Cir. 2026) (rejecting Respondents' "newfound interpretation" as inconsistent with "the assertedly unambiguous language of the statute" and because "it raises various textual and interpretive problem," citing similar holdings from the Second, Sixth, Tenth, and Eleventh Circuits)).) As noted below, however, the Court necessarily must apply the requirements of section 1357(a)(2) in this case, and it need not address whether, or the extent to which, section 1225(b)(2) applies to the detention of Segundo T.

evidence. *Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

**B. Invalidity of Warrantless Arrest**

The Court starts with Segundo T.'s argument that Respondents took him into custody pursuant to an invalid warrantless arrest under 8 U.S.C. § 1357(a)(2). (Pet. ¶¶ 40–43.) Respondents disagree with Segundo T.'s assertion that arresting agents failed to comply with section 1357(a)(2) when taking him into custody. (Doc. No. 9 at 10–13.)

Even if a non-citizen is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), as interpreted by *Avila*, ICE must have valid statutory authority to arrest.[5] *E.g.*, *Venancio P.J. v. Blanche*, No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *2 (D. Minn. June 29, 2026). The parties agree that no warrant issued prior to Segundo T.'s August 20, 2026 arrest and that Respondents meant to detain Segundo pursuant to a warrantless arrest as provided by 8 U.S.C. § 1357(a). (Doc. No. 9 at 10–13.) Section 1357(a)(2) permits an immigration officer to "arrest any [non-citizen] in the United States" without a warrant "if he has reason to believe that [1] the [non-citizen] . . . is in the United States in violation of any such law or regulation *and* [2] is likely to escape before a warrant can be obtained for

[5] This Court has previously concluded that section 1357(a)(2) "appl[ies] to warrantless immigration arrests of individuals subject to mandatory detention under § 1225(b)(2)(A)." *Venancio P.J.*, 2026 WL 1862252 at *3 (citing *Francisco M.A. v. Blanche*, No. 26-CV-2032 (JRT/EMB), 2026 WL 1229701, at *2 (D. Minn. May 5, 2026); *Fernando C.C. v. Bondi*, No. 26-CV-1235 (LMP/JFD), 2026 WL 446408, at *2 (D. Minn. Feb. 17, 2026) ("Accordingly a warrantless arrest under 8 U.S.C. § 1357(a)(2) is a threshold exception to arrest by warrant and, after the arrest, detention may proceed under Sections 1225, 1226 and 1231."); *Espinoza-Avalos v. Blanche*, No. 8:26-CV-0191, 2026 WL 1396593, at *2 (D. Neb. May 19, 2026); *Jose Luis G.G. v. Noem*, No. 5:26-CV-05023 (KES), 2026 WL 836807, at *2–3 (D.S.D. Mar. 26, 2026)).

his arrest." 8 U.S.C. § 1357(a)(2) (emphasis added). The Eighth Circuit has interpreted the term "reason to believe" in section 1357(a)(2) to "mean[] constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Respondents liken Segundo T.'s arrest to the valid warrantless arrest in *Quintana* and argue that both prongs of section 1357(a)(2) are satisfied due to (1) Segundo T.'s admission to ICE agents regarding his lack of immigration status, and (2) Respondents' assessment that Segundo T.'s "failure to register his address as required by law [8 U.S.C. §§ 1302, 1305], his lack of identification containing a current address, and access to a mobile conveyance that would allow him to leave the area with no way to locate/contact him in the future." (Doc. No. 10-1 at 2; Doc. No. 9 at 12.)

However, the Court cannot agree with Respondents that the second prong of section 1357(a)(2)—likelihood of escape before a warrant can be obtained—is satisfied.[6] The facts here are readily distinguishable from *Quintana*, where officers had reason to believe the non-citizen was likely to escape because they were unable to verify his identity, were unable to validate his claims of legal entry into the United States, and where the non-citizen was suspected of a criminal drug-trafficking offense. *Id.* at 1240–41. Here, by contrast, the record shows that Segundo T. was forthcoming and honest with ICE agents about his immigration status;[7] that Segundo T. had no criminal history and had no fraudulent

[6] The parties do not dispute that the first statutory requirement—that Segundo T. is a non-citizen who lacks legal status to reside in the United States—has been met.

[7] In an arresting agent's recounting of the arrest, he emphasized Segundo T.'s cooperative and forthcoming nature. (Doc. No. 10-1 at 2.) The arresting agent recalls that Segundo T. made three admissions regarding his immigration status, as follows: "[Segundo T.] freely

identification or immigration documents in his possession; and that, even before initiating the encounter with Segundo T., ICE agents had been surveilling and inspecting Segundo T. and his associate. Additionally, though Respondents assert that Segundo T.'s failure to register his address with DHS provided *de facto* grounds to deem Segundo T. a flight risk, Respondents do not assert or otherwise represent that Segundo T. acted cagey or tried to obstruct agents from knowing any of his personal information (e.g., his identity, citizenship, nationality, or address). Further, Respondents seemingly urge the adoption of a per se rule that any non-citizen who the officer believes is removable and who has "access to a mobile conveyance that would allow him to leave the area" (Doc. No. 10-1 at 2)—i.e., a car—and subject to a traffic stop is necessarily likely to escape. However, such a rule would effectively render the second statutory requirement of section 1357(a)(2) meaningless and, to the extent that it would justify arrest of all removable non-citizens, it would also violate constitutional due process. *See, e.g.*, *Quintana*, 623 F.3d at 1239 (stating that "the Fourth Amendment applies to arrests of illegal [non-citizens]" and interpreting the phrase "reason to believe" in section 1357(a)(2) to mean "constitutionally required probable cause"). The facts cannot support a conclusion that constitutionally required

admitted that he did not have permission to reside in the United States legally. [Second arresting agent] asked [Segundo T.] if he was in the United States illegally, to which [Segundo T.] responded 'yes' while nodding his head. [Segundo T.] freely admitted he was born in Ecuador and had an expired Ecuadorian passport in his possession." (*Id.*)

probable cause supports the second prong of section 1357(a)(2), and Segundo T. was not arrested on valid statutory authority.

Thus, Segundo T. has shown that ICE's detention of him on August 20, 2026 was unlawful and he is entitled to release.[8] *E.g.*, *Felix Alberto J.M. v. Blanche*, No. 26-CV-2944 (LMP/DLM), 2026 WL 1906596, at *5 (D. Minn. July 2, 2026) (concluding Respondents' arrest of petitioner was invalid warrantless arrest and petitioner was entitled to remedy of release); *Venancio P.J. v. Blanche*, No. 26-CV-2740 (ECT/JFD), 2026 WL 1862252, at *3 (D. Minn. June 29, 2026) (same).

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT the Petition (Doc. No. 4) is GRANTED as follows:

1. Respondents are ORDERED to release Petitioner Segundo T. immediately, without conditions, and in any event no later than 4:00 p.m. CT on September 10, 2026.

---

[8] Although the Court need not address the question of whether Segundo T.'s detention without bond violates the Fifth Amendment, it nevertheless alternatively concludes that, on balance, the *Mathews v. Eldridge* due-process factors tip in Segundo T.'s favor. Segundo T. has a significant private interest at stake (i.e., his liberty, his detention in a carceral setting, his inability to earn a living, and his separation from his grandchildren); the risk of erroneous deprivation through incarceration is needlessly high when inexpensive procedures such as a bond hearing protect against erroneous deprivations of liberty and separation of families; and the federal government has very little interest in incarcerating individuals en masse who pose little or no risk of flight or danger to the community. Thus, Segundo T.'s ongoing detention is also unlawful for this reason as well. *See, e.g.*, *R.M. v. Blanche*, No. 26-CV 2283 (LMP/DLM), 2026 WL 1506306 (D. Minn. May 29, 2026) (concluding that respondents' mandatory detention without bond under 8 U.S.C. § 1225(b)(2) and *Avila* violated petitioner's rights to procedural due process and ordering a bond hearing); *Jesus Alejandro G.A. v. Blanche*, No. 26-CV-1932 (LMP/ECW), 2026 WL 1383138 (D. Minn. May 18, 2026) (same).

2. On or before 11:00 a.m. CT on September 11, 2026, counsel for Respondents shall file a letter affirming that they have released Petitioner Segundo T.

3. On or before 11:00 a.m. CT on September 11, 2026, counsel for Respondents shall also file a declaration pursuant to 28 U.S.C. § 1746 by an individual with personal knowledge that states when and where the Petitioner was released, attaches any and all documentation concerning the Petitioner's release, and affirms with supporting documentation that all property of Petitioner was returned to Petitioner upon release (or, if property is retained, state which property is retained, the legal basis for its retention, and affirm that Respondents duly provided Petitioner with certified copies of any and all immigration-related documentation). Respondents must submit each of the following three forms to affirm return of Petitioner's property: I-77, I-216, and G-589. If Petitioner's property is lost, Respondents must also submit form I-387, "Report of Detainee's Missing Property." If Respondents cannot provide one or more of these forms, Respondents must address why they are unable to do so.

4. Petitioner Segundo T. may move separately within 30 days of final judgment in this action to recover attorney's fees and costs under the Equal Access to Justice Act, 20 U.S.C. § 2412(d).

5. To the extent Petitioner Segundo T. seeks additional relief, the Petition is DENIED.

6. Segundo T.'s motion for a temporary restraining order (Doc. No. 2) and Motion for Order to Show Cause (Doc. No. 3) are DENIED AS MOOT.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 9, 2026

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court